Gee vs. Thompson.

## No. 9356.

### HANNAH P. GEE vs. GEORGE W. THOMPSON.

The District Court of the Parish of Natchitoches is without jurisdiction to enforce a judgment of the District Court of the Parish of Bossier, or to entertain a suit against the executor of a succession opened and pending in the latter parish.

The only allegation upon which the jurisdiction in this case can be sustained, is the allegation of a personal contract between plaintiff and defendant individually and not as executor. That allegation is not sustained by the evidence.

APPEAL from the Eleventh District Court, Parish of Natchitoches. *Pierson*, J.

*Watkins & Scarborough* for Plaintiff and Appellee:

1. This suit is brought for the recovery from the defendant of eight per cent interest on $3444 44, same being the one-ninth of the succession of B. L. Saunders, of which the plaintiff was awarded the usufruct during her natural life, and at her death to be returned to the succession or the heirs of deceased. 11 Ann. 657, Gee vs. Thompson; 27 Ann. 593, Succession of Newman; R. C. C. 2382, 558.

2. A document annexed to an answer and made a part of it, is a judicial admission and cannot be contradicted or explained by the parol evidence of the party who filed the answer. 14 La. 368, Nott vs. Braden; 1 R. 469, Leverich vs. Walden; 7 Ann. 294, Rugely vs. Goodloe; 4 A. S. 193, Syndic vs. Puche.

   A party cannot deny a judicial admission solemnly made, nor shift his position at will to a contradictory one, in relation to the subject-matter of litigation, to defeat the action of the law upon it. 5 Ann. 18, Denton vs. Erwin; 4 A. 416.

3. This is not a suit brought to enforce a money judgment in the sense of R. C. C. 3547. The original judgment only recognized a *right*—a usufruct for life. R C. C. 2382, 558, 533, 534.

4. While the *imperfect* usufruct transfers to the usufructuary the *ownership* of the things subject to the usufruct, so that he may use or consume them, yet he is under the obligation of *returning the same quantity*, quality and *value* to the owner, or their estimated price, at the expiration of the usufruct. R. C. C. 536, 549; 3 Ann. 494, Fisk vs. Fisk.

5. The interest on money is supposed to be obtained day by day, and belongs to the usufructuary in proportion to the duration of the usufruct, and is due to him though same may not be collected at the expiration of the usufruct. R. C. C. 547, 549, 563.

6. The failure of plaintiff to furnish security did not deprive her of it. R. C. C. 563, 547, 566.

7. All personal actions are prescribed by ten years. R. C. C. 3544; C. P. 3; 14 Ann. 301, Kemp As. Cornelius.

8. Prescription *liberandi causa* is interrupted by an acknowledgment of the creditor's right. R. C. C. 3520.

   Prescription of debt evidenced by a judgment may be interrupted by the same mode as the prescription of debts evidenced in any other way. 30 Ann. 1071, Succession of Patrick; 34 Ann. 413, Levy vs. Calhoun.

   The acknowledgment of a debt by a succession representative suspends the prescription of it while the succession remains under administration. 33 Ann. 305, Cloutier vs. Lemee; 30 Ann. 853, Renshaw vs. Stafford; 31 Ann. 713, Mariast vs. Guilbeau; 32 Ann. 337, Huer vs. Hornsby.

9. Defendant's plea of *res judicata* cannot be sustained, because the issues in this suit are not the same as in the one pleaded. 27 Ann. 593, Succession of Newman; 3 Ann. 104, Succession of Fortier; 24 Ann. 331, De St. Romes vs. Carondelet; R. C. C. 2286.

10. Plaintiff sues for use and usufruct of a sum of money. The damages due for *delay* in paying a sum of money are called interest. R. C. C. 1935.

As plaintiff was *not owner* of the sum of money, but the legal usufructuary of it, the sum she claims is not *interest*, but *capital;* and she is entitled to *interest* on each annual instalment of same till due. R. C. C. 556.

11. The objection that a party who declares on a *contract* cannot recover on a *quantam meruit* is waived by joining issue on the merits, going to trial and suffering evidence received in support of a *quantum meruit.* 6 Ann. 202, Cairy vs. Randolph; 9 Ann. 163, Beard vs. Evans; 14 Ann. 848, Brown vs. Snow; 18 La. 321, Powell vs. Aiken & Guind.

### *Jack & Dismukes* for Defendant and Appellant:

Courts of ordinary jurisdiction are not permitted in any way, or for any purpose, to usurp or interfere with the authority of probate courts in matters that pertain to the opening, administration and settlement of estates. The law confers upon the probate tribunal where the succession is opened, plenary and exclusive jurisdiction over this subject-matter and all its incidents *ab origine ad terminum.* Its jurisdiction begins with the beginning and *ends only with the end.* It matters not where the fiduciary of the estate may reside, nor how long he may have it in charge, until the succession is settled and closed and he is finally discharged, he is just as subject *as such* to the jurisdiction of *that* court in one part of the State as in another, and *for that very reason* he is not amenable to any other court for *any matter or thing* pertaining to that estate and pending in *that* court.

All debts in money which are due from successions administered by curators appointed by courts, and by testamentary executors, shall be liquidated *and their payments enforced by the court of probate of the place where the succession is opened.* C. P. art. 983.

"The judges of the courts of probate who have appointed or confirmed the tutors or curators of minors, interdicted absent or other persons unable to administer their own property, *testamentary executors*, curators of vacant estates, of absent heirs, or other persons administering successions, *alone have the power of compelling them to account and pay over what they may be found to owe.*" C. P. 997, 924, 1007; C. C. 1141, 1149; C. A. S. 212; 7 A. S. 106; 2 L. 52, 484; 14 Ann. 236; 18 Ann. 156; 24 Ann. 278.

Claims for the marital portion come exclusively within the province of the probate courts. 3 Ann. 104; 5 Ann. 159; 16 Ann. 352; 21 Ann. 354; 27 Ann. 593; 30 Ann. 468.

A *modus* of enforcement of every character of judgment rendered by probate courts is provided for in Articles 1053 to 1058, inclusive, of the Code of Practice.

There are *but two* cases under our law where a judgment can form the basis of a distinct and separate proceeding; one is where the judgment is a *foreign* one, and the other is where the resident debtor dies *after* rendition of judgment and his estate passes under administration. 14 Ann. 301; 16 Ann. 352.

A judgment that grants a relief *wholly at variance* with the pleadings and prayer, is *ultra petitionem,* and for that reason a nullity.

When the judgment of the Supreme Court simply affirms *that* of the lower court, it is *the latter alone* that determines *the amount,* and no expression of the appellate court on a collateral question can be held to supply it.

"In order to ascertain the matters which are adjudicated in a judgment, recourse must be had to the decretal portion of the judgment and not to the body or reasons of the same." Succession of Haggett, 36 Ann., No. 3, p. 336.

The contract of annuity is barred by the prescription of three years. C. C. art. 3538.

All personal actions in general are prescribed in ten years. C. C. art. 3544.

The rights of usufruct are lost by *non-user* for ten years. C. C. art. 3546.

All judgments for money (not revived) are prescribed by lapse of ten years from the rendition of such judgments. C. C. art. 3547.

The rule that *testimonial* proof is inadmissible to prove a contract to pay interest at 8 per cent is imperative and inhibitory, and evidence of that character, though received with-

out objection, will not be considered.   C. C. 2924; 15 Ann. 457; 17 Ann. 145; 21 Ann. 279; 23 Ann. 201; 25 Ann. 600.

When a written obligation is made *the basis* of the action and the plaintiff is ruled to produce it, she cannot, in answer, reverse her position by declaring it *a parol agreement* instead of *a written contract*—*a new* and *different* cause of action could not be thus substituted by an amended petition, and much less by an answer to a prayer for oyer.  She must stand or fall on the verity of her averments—parol evidence cannot be admitted in support of a written contract.   19 Ann. 531; 28 Ann. 181.

An executor is a *third person* in his relation to the debts of the estate, and parol evidence is not admissible to show *his personal* promise to pay them.   The law is mandatory and no such evidence can be considered.   R. S. 1443; 23 Ann. 747; 24 Ann. 401; 25 Ann. 492; 26 Ann. 221; 26 Ann. 421; 28 Ann. 181.

Every obligation is null that has been contracted on a potestative condition on the part of him who binds himself.   C. C. Art. 2034.

The object of the contract must be possible; and the possibility of it, must be determined by the nature of the thing which forms the object of it.   C. C. Arts. 1891 and 1893.

It is the *right* of the usufructuary of the marital portion, and *one of her obligations* (when she cannot give bond in such a case as this) with the consent of the owner or the authority of the judge, to have the money put out at interest; but it is *no part* of the duty of the executor to do so.   He represents *the heirs* in the premises, and stands in their place and stead.   *It is not for him to determine whether she can give bond or not, or to limit her time for doing so.   Non constat* but that she may abandon or forfeit it.   C C. Art. 563; 12 Ann. 885; 13 Ann. 143, 157.

Testamentary executors, unlike administrators, *primarily* represent the heirs of the estate, who *at any time may take the seizin from them* on complying with the conditions prescribed in Article 1671 of the Civil Code, hence, without *their consent* and *that of the usufructuary* they could not put out at interest money belonging to the estate, under the conditions contemplated in Article 563 of the Civil Code, and even *with their consent*, they could only do so on the principle *Consensus tollit leges*.

An executor is so immediately and completely the servant of the heirs, that even after his administration has expired, he is still bound to continue to defend suits commenced by or against him until the heirs appear or cause themselves to be represented.   C. C. 1673, 1676; 2 Ann. 923; 4 Ann. 169; 13 Ann. 582

Article 563 of the Civil Code, so far from imposing a duty on the executor having charge of the imperfect usufruct in such a case, merely confers a right on the usufructuary, which he may or may not exercise at his option; three modes of relief are allowed him, under the provisions of the Code; to give the bond; to give a special mortgage; and lastly, to have the money put out at interest, with the consent of the owner or the authority of the judge—the executor is no more obliged, to put out the money for the behoof of the usufructuary than he is to give the bond or the special mortgage.   C. C. 563-564; 13 Ann. 143, 157; 18 Ann. 601, and Samuels et al. vs. Brownlee et al. 36 Ann. No. 3, p. 233.

There need be but two enquiries to determine the validity of the plea of "*res adjudicata*— what does the plaintiff ask."  On what cause does he base his demand ?  If the judgment in one court be based on *the same cause of action* that had *already* been *merged* and *absorbed* in a judgment of another court of *exclusive* jurisdiction over *the whole subject matter*, the plea should be sustained.   29 Ann. 772.

The opinion of the Court was delivered by

FENNER, J.   In 1854, in the district court for the parish of Bossier, plaintiff, as indigent widow of Benjamin L. Saunders, recovered a

judgment for the marital portion allowed her under Art. 2382 of the Civil Code, in the following terms :

"In this case, by reason of the law and the evidence being in favor of plaintiff, on her claim for marital portion, it is ordered, adjudged and decreed, that the plaintiff, Hannah P. Gee, be decreed to have one-ninth of the net proceeds of the estate of Benjamin L. Saunders in usufruct as a marital portion, and that she do have and recover of and from the defendant, Martha L. Saunders, wife of Louis T. Steele, $213.88, and from Mary Saunders, a minor, $225 ; and from Maria Saunders, wife of Algemon S. Bailey, $202.77 ; and from Louis T. Steele, tutor for James L. Saunders, $227.77 ; and from Joseph A. Berry, tutor for Edwin Campbell, Mary Campbell and Sarah Campbell, children of Francis J. Saunders, deceased, $200 ; and from Louis F. Steele, tutor of Thomas J. Saunders, $211 ; and from Louis F. Steele, tutor of Ann F. Saunders, $244 ; and from Louis F. Steele, adminis-trator of the Succession of Benjamin F. Saunders, deceased, $225 ; all of said sums bear five per cent interest from date hereof; and it is further ordered, adjudged and decreed, that said plaintiff recover of George W. Thompson, executor of the last will and testament of Benjamin L. Saunders, one-ninth part of the net proceeds of all the property belonging to the succession of Benjamin L. Saunders, de-ceased, with five per cent per annum interest from final settlement of said succession, except the slaves partitioned to the heirs, all said sums of money exclusive of interest, to be held by said plaintiff in usufruct, according to law, as her marital portion of the succession of said Benjamin L. Saunders, and to return after her death to the heirs of said succession, now living or their proper representatives ; and it is further ordered that said plaintiff, by reason of the law and the evi-dence being in favor of the defendants, on the claim for community, take nothing therefor." R. p. 14, et seq.

The foregoing judgment was affirmed by this Court. 11 Ann. 657.

The present action is brought in the parish of Natchitoches, against G. W. Thompson individually.

Plaintiff, after setting forth the judgment, alleges substantially: That the amount of capital, to the usufruct of which she became entitled thereunder, was $3444 44; that she was unable to furnish the security required by law in order to receive possession of said fund ; that G. W. Thompson, "*in his individual right and capacity, took possession of said capital sum and used, operated and controlled the same, and therefore con-tracted and obligated himself in writing and in various other ways to pay to her interest upon said capital sum and its earnings of interest, the sum*

*of eight per cent annually from and after the first day of January, 1867;"* that Thompson had made her numerous partial payments prior to 1874, but had made none since that date; that her judgment is not prescribed, because the succession of B. L. Saunders had never been finally settled; and further, because said judgment was not a "money decree, inasmuch as no money was recoverable by execution under it against said succession, but same only recognizes and establishes a right, which is in the nature of a perpetuity and is therefore imperceptible." She prays for judgment against Thompson personally for eight per cent annually from January 1, 1856, and interest on each annual instalment of said interest, subject to such credits for partial payments as Thompson may have made.

Stripped of the numerous parasitic issues with which it has been encumbered by the ingenuity of counsel, the case is a very simple one.

Defendant filed exceptions of want of jurisdiction, no cause of action, *res judicata*, prescription, and others not necessary to mention. All were overruled or referred to the merits.

It is obvious that the court of Natchitoches parish is incompetent to enforce a final judgment rendered by a court of Bossier parish, or to entertain a suit against a succession opened and pending in Bossier parish, or against an executor qualified in the latter parish and administering under its authority. Of course the learned counsel for plaintiff makes no such pretense. His suit rests upon the allegation of a personal contract between his client and defendant in his personal capacity, as set forth in the italicized portions of our foregoing statement of his petition. If this allegation is sustained by proof, his action has a foundation to rest on; if not so sustained, it must inevitably fall.

The allegation was that such contract had been made "in writing and in various other ways."

Defendant demanded oyer of the written contract so alleged.

Plaintiff responded, admitting that said contract was not in writing, but was verbal only; but alleging that payments had been made under said agreement for which receipts were given, and that she relied upon said receipts as "written evidence" of said contract.

Waiving technical objections as to this mode of proving an alleged contract in writing, the question remains: Has the contract been proved at all?

It is too plain for discussion that it has not been proved.

The plaintiff died during the pendency of the suit and her evidence is wanting. The only witness in support of the contract is her son

Gee vs. Thompson.

and heir, Charles G. Gee. With the confusion of ideas not uncommon in witnesses as to what they know and what they only believe, he testifies quite formidably in chief; but under cross-examination it conclusively appears that he knows absolutely nothing on the subject and he himself admits that he has always said that he could not establish the contract. His evidence has not the slightest value even as a beginning or as an aid of proof.

The receipts might have been of value as support and corroboration of other proof of contract; but they are utterly insufficient by themselves to establish it.

None of them refer to any contract. Some of them are from G. W. Thompson, without mention of his capacity; others are from "Thompson, dative testamentary executor," etc. They are payments made at irregular intervals and in amounts bearing no apparent relation to any particular rate of interest. They all describe the payments as made for "interest on the judgment", not on any contract. They establish nothing except the fact that Thompson did make such payments, but they wholly fail to prove that he had bound himself personally to make them, much less to continue to make them.

The only one remotely tending in that direction is receipt No. 11, and that is a receipt from "Geo. W. Thompson, *dative testamentary executor of the last will of B. L. Saunders, deceased*," thus negativing his personal ability.

On the other hand, the record presents the positive testimony of defendant denying the existence of any such contract, parol or written, express or implied, and explaining circumstantially his whole action in the premises.

For these reasons we are compelled to reverse the judgment appealed from, which, however, is itself totally at variance with plaintiff's alleged contract, being a judgment for five per cent interest per annum on $3444.85 from June 17, 1874, to October 10, 1883. This is not the enforcement of any contract proved or even alleged.

It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be and is hereby annulled, avoided and reversed; and it is now ordered, adjudged and decreed, that plaintiff's demand be rejected at her cost in both courts, without prejudice to her rights against the executor and heirs of Benjamin L. Saunders, deceased.

Rehearing refused.